TARA MARTENS MILLER, ISB #5773
SPINK BUTLER, LLP
P.O. Box 639
251 E. Front Street, Suite 200
Boise, Idaho 83702
Telephone: (208) 388-1000
Facsimile: (208) 388-1001
tmiller@spinkbutler.com


David E. Suchar (MN #392583)
John R. Darda (MN #3878298)
MASLON LLP
3300 Wells Fargo Center
90 S. 7th Street
Minneapolis, Minnesota 55402
Telephone: (612) 672-8200

david.suchar@maslon.com
john.darda@maslon.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| POWER CONSTRUCTORS, INC., an Idaho corporation, <br><br> Plaintiff, <br><br> vs. <br><br> OLD REPUBLIC GENERAL INSURANCE CORPORATION, An Illinois corporation, <br><br> Defendant. | Case No.:  1:16-cv-521 <br><br> JURY TRIAL DEMANDED <br><br><br> **COMPLAINT** |

For its Complaint against Defendant Old Republic General Insurance Corporation,

Plaintiff POWER Constructors, Inc., states and alleges as follows:

## PARTIES

1.      At all times herein mentioned, Plaintiff **POWER Constructors, Inc.** ("POWER") was and is a corporation duly organized and existing under the laws of Idaho, qualified to do business in the state of Idaho, and at all times herein mentioned was doing business at its principal place of business at 3940 Glenbrook Drive, Hailey, Blaine County, Idaho 83333. POWER is a firm providing construction management and inspection services for projects involving delivery of power.

2.      Upon information and belief, Defendant **Old Republic General Insurance Corporation** ("Old Republic") is a corporation organized and existing under the laws of Illinois and maintaining its principal place of business at 307 North Michigan Avenue, Chicago, Cook County, Illinois 60601.  At all times herein mentioned, Old Republic was qualified to do business in the state of Idaho, and at all times herein mentioned was doing business by insuring risks located within Blaine County, Idaho.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.      Venue is appropriate in the District of Idaho, pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c), because (a) Defendant is subject to personal jurisdiction in this judicial district. Defendant is licensed to sell insurance in Idaho, has transacted business in the District of Idaho and it is appropriate for this Court to exercise jurisdiction over them, and (b) a substantial part of the events or omissions giving rise to the claim occurred in the District of Idaho.  Venue is also appropriate in the District of Idaho because the Insurance contract at issue and upon

2

which this action is based was, upon information and belief, negotiated, signed, and delivered in Idaho to an Idaho insured, who employed Plaintiffs in the Underlying Actions, and created a continuing contractual obligation between Defendant and two or more Idaho insureds.

## BACKGROUND

### *The Underlying Action*

5.      On or about August 15, 2013, POWER entered into a subcontract agreement with Track Utilities, LLC ("Track") on a power transmission line project in Medicine Lodge, Kansas (the "Project").

6.      Upon information and belief, the last act necessary for the formation of the subcontract occurred in Idaho.

7.      Upon information and belief, Track is a corporation organized and existing under the laws of Idaho and maintaining its principal place of business in Idaho.

8.      Under the terms of the subcontract, Track was required to procure and maintain certain liability insurance covering POWER as an additional insured.

9.      Pursuant to the subcontract, Track provided POWER with a certificate of liability insurance dated February 21, 2013, which stated that POWER was an additional insured on a commercial general liability policy, policy no. A7CG04891200 issued by Old Republic (the "Policy"). Ex. 1.

10.     Said Policy is attached to this Complaint as Ex. 2.

11.     On or about August 29, 2013, an accident occurred in which Michael Rowan, a Track employee, sustained injuries, and another Track employee was killed while working on the Project.

12.     Within three days of the August 29, 2013 accident, POWER provided notice of the accident to Old Republic.

13.     On or about August 24, 2015, Michael Rowan filed a personal injury action asserting claims of negligence and willful, wanton and reckless conduct against POWER and other defendants in a case captioned as *Rowan v. POWER Constructors, Inc. et al.*, Case No. 2-15-CV-09227-JWL-TJJ, in the United States District Court for the District of Kansas (the "Underlying Action").

14.     Rowan's complaint also alleges $15,000,000 (fifteen million dollars) in actual damages for Michael Rowan, for damages for loss of consortium for Mrs. Rowan of not less than $75,000, for punitive damages as determined by a jury for willful, wanton, reckless and intentional conduct, and for costs and expenses and other relief.   Ex. 3 (Complaint, p. 10).

15.     On or about August 28, 2015, POWER was served with the complaint in the Underlying Action.

### *POWER's Tender to Old Republic*

16.     On or about August 31, 2015 POWER sent Gallagher Bassett Services, Inc. ("Gallagher Bassett"), a third-party claims administrator purportedly handling this matter on behalf of Old Republic a copy of the complaint in the Underlying Action and requested that Old Republic defend POWER as an additional insured under the Track Policy.  Ex. 4.

17.     Gallagher Bassett responded to POWER's tender on September 1, 2015, with an acknowledgment of claim, stating that Old Republic could "neither accept nor reject all or part of this claim pending the completion of our investigation." Ex. 5.

18.     In addition to POWER's August 31, 2015 tender to Old Republic, POWER's third-party administrator Sedgwick Claims Management Services sent a tender letter dated September 9, 2015 requesting defense and indemnification on behalf of POWER and its insurer. Ex. 6.

4

19.     On or about September 1, 2015, POWER's insurance broker asked Gallagher Bassett Sr. Resolution Specialist James Dunham for a recommendation for defense counsel.  Mr. Dunham responded that same day, stating "I have no recommendation [for Kansas City defense counsel] as I've not had the need to retain Kansas City counsel before this case."  Thus, before hiring counsel, POWER sought guidance from Old Republic's Third-Party Administrator. Ex. 7.

20.     Although the complaint in the Underlying action required an answer within 21 days of service (*i.e.*, by September 18, 2015) neither Old Republic nor Gallagher Bassett communicated with POWER again until 65 days later, on November 5, 2015.  POWER's records indicate that the letter was sent by U.S. Mail to Sedgwick Claims Management Services.   Ex. 8.

### *POWER Selects Defense Counsel*

21.     Having been told by Gallagher Bassett that it had no recommendations for defense counsel and in fact that Gallagher Bassett and ostensibly Old Republic had no knowledge or ability to select Kansas City defense counsel, while at the same time a responsive pleading was soon due to be filed, Mr. Peebles immediately commenced a search for defense counsel using recommendations obtained from various insurance industry sources.

22.     Mr. Peebles interviewed four firms recommended by members of the insurance industry in the Kansas City, Kansas area, where the Underlying Action is venued. Part of the urgency in hiring counsel and defending the *Rowan* lawsuit immediately was that while Old Republic failed to defend the lawsuit, POWER faced $15 million in exposure in the lawsuit for actual damages and an unspecified amount of punitive damages—a far greater amount than the limits of the Old Republic policy.

23.     Mr. Peebles selected Thomas Buchanan of the law firm of McDowell Rice in Kansas City based on the fact that Mr. Buchanan is well-regarded in the District of Kansas, has

served on that federal court's Civil Bench and Bar Committee and has substantial experience and

success in defending high risk and high profile personal injury cases similar to the Underlying

Action and for clients in the same industry as POWER.  Mr. Buchanan also had significant

experience litigating before the presiding judge in the Underlying Action.

24.     On September 14, 2015, Mr. Buchanan commenced an investigation into the

allegations of the complaint.  Accordingly, Mr. Buchanan began interviewing key POWER

employees and reviewing project contracts and other materials.

25.     Plaintiff's counsel in the Underlying Action has sought to accelerate the pace of

the Underlying Action. For example, on September 15, 2015, before an answer in the Underlying

Action was due, Plaintiff's counsel demanded a discovery conference to set deadlines, and

demanded that a deposition of POWER's former construction manager be scheduled before the

end of September 2015.

26.     POWER filed an Answer to the First Amended Complaint in the Underlying

Action on October 19, 2015.  Mr. Buchanan had previously requested from the Court an

extension to file the Answer, and after litigation on the issue, the Court granted in part and

denied in part this request, Ordering that the Answer be filed by October 19, 2015.  (Docket

Entry ("D.E.") 26.).

### *Old Republic Refuses to Defend POWER with POWER's Chosen Counsel*

27.     In a letter dated November 5, 2015, Gallagher Bassett purported to reserve Old

Republic's rights and at the same time to conditionally accept POWER's tender, stating that it

was appointing St. Louis-based attorney Lawrence Pratt of the Fisher Patterson Sayler & Smith

law firm as defense counsel for POWER.  Ex. 8.  Gallagher Bassett did not note in its letter that

the Underlying Action had been actively litigated between August and November 2015.

6

28.     By the time Old Republic's November 5, 2015 letter was received by POWER, POWER had already engaged in significant discovery, investigation and litigation under the representation of Mr. Buchanan, including, but not limited to, the following:

a.     Investigation of the allegations in the complaint, interviews of several key POWER employees and witnesses;

b.     Review of key documents and the Project file;

c.     Review of, drafting and filing a responsive pleading to Plaintiff's first amended complaint;

d.     Conference with co-defendants and moving to strike exhibits attached to the complaint and first amended complaint as improper;

e.     Attending the Rule 26 discovery conference, negotiating and drafting a discovery plan;

f.     Developed a comprehensive defense strategy;

g.     Responded to demands for an early deposition of a key POWER witness including review of documents in preparation for early depositions;

h.     Reviewed and responded to plaintiff's interrogatories and requests for production of documents; and

i.     Prepared initial disclosures.

29.     Counsel for the parties in the Underlying Action conferred about scheduling on October 30, 2015, with the Scheduling Conference set for December 7, 2015. As soon as the parties conferred about scheduling, Rowan demanded an early date for the deposition of a critical witness, POWER's former construction manager Mr. Stovall, and served written discovery even though initial disclosures had not occurred.

30.     As a further explanation of the aggressive pace set by Rowan's attorneys, Rowan propounded his First Set of Requests for Production of Documents and Electronically Stored Information ("Requests") on POWER on November 5, 2015, twenty-five days before POWER was even required to produce its initial disclosures. (D.E. 35 and 135-1.)

31.     Thus, in addition to the materials required in POWER'S Rule 26 initial disclosures, Rowan's Requests to POWER contained sixty separate requests for documents and electronic information including requests for tens of thousands of pages from other construction projects than the one Rowan was injured on.

32.     Thus, Rowan's requests added immeasurably to the burden of the case at an early date as requests for production and interrogatories commonly occur after initial disclosures.

33.     Mr. Peebles responded to Gallagher Bassett's purported conditional tender acceptance and assignment of St. Louis counsel by letter dated November 13, 2015.  In that letter, Mr. Peebles alerted Old Republic to the extensive work already completed and planned under representation by Mr. Buchanan and objected to the appointment of Mr. Pratt as defense counsel on the following bases:

      a.     Mr. Pratt practiced law in St. Louis, Missouri whereas the lawsuit was pending over 250 miles away in federal court in Kansas City, Kansas;

      b.     The Underlying Action involves an accident that occurred in Medicine Lodge, Kansas, over 500 miles from St. Louis;

      c.     Mr. Pratt was not admitted to the Kansas Bar nor was he admitted to practice in the United States District Court for the District of Kansas;

      d.     Mr. Pratt had no stated experience or expertise representing sophisticated design-build contractors such as POWER; and

e.     Mr. Pratt had little known experience in the jurisdiction where the

Underlying Action was pending or with the judge presiding over the

Underlying Action.

34.     In his November 13, 2015 letter, Mr. Peebles requested that Old Republic vet and

retain Mr. Buchanan as POWER's counsel for the Underlying Action, noting that pending

discovery was soon due and requesting a response by November 30, 2015.  Ex. 9.

35.     Gallagher Bassett and Old Republic ignored Mr. Peebles' request. Instead, by

letter dated December 2, 2015, Mr. Pratt contacted Mr. Buchanan, indicating that he was taking

over as counsel and requesting that Mr. Buchanan transfer the file to him.  Ex. 10.

36.     Mr. Buchanan was of the opinion that because POWER was the client, Mr. Pratt's

unilateral demand addressed to him was not proper.

37.     Mr. Peebles responded to Mr. Pratt, copying Gallagher Bassett, by letter dated

December 7, 2015, recounting the significant amount of work and litigation that had already

occurred in the case. Mr. Peebles further stated that in consideration of the ongoing work, it

would be highly prejudicial to POWER's defense to change attorneys at that time, now over

three months into the litigation.  Ex. 11.

38.     On November 30, 2015, Mr. Buchanan served POWER's initial Rule 26(a)(1)

disclosures as ordered by the Court in the Underlying Action.

39.     Based on the number of requests, and concurrent obligation to produce its initial

disclosures, on December 2, 2015, POWER sought a brief ten-day extension of time to respond

to Rowan's Requests for Production. (D.E. 52.) Once again, underscoring their aggressiveness

and the speed by which they intended to litigate the claims with the intent of gaining advantage,

Rowan opposed POWER's routine request (D.E. 53), despite the fact such requests are almost always agreed or unopposed. The extension was nevertheless granted. (D.E. 57.)

40.     In addition, Rowan engaged in an extensive motion practice attack on written discovery. For example, Rowan argued that POWER had waived its right to assert any objections to written discovery and, repeatedly and unsuccessfully, challenged virtually every privileged or work product assertion by POWER, ultimately failing to persuade the court that there had been any waiver. Further, Rowan refused to produce critical discoverable documents forcing Mr. Buchanan to seek relief from the court.

41.     Aggressive tactics of Rowan's counsel notwithstanding, the defense of the Underlying Action was further complicated by POWER's former construction manager, Mr. Stovall, who was known to be unhappy with his post-accident transfer by POWER and was actively assisting Rowan's counsel while refusing to communicate with POWER.

42.     This situation and the nature of Plaintiff's allegations meant from the outset, that Mr. Buchanan was engaged in a level of activity that vastly exceeded the normal lawsuit. Rowan's counsel clearly sought to gain advantage by forcing early depositions, disclosures and discovery and thus, the time frame for mastering the facts of Mr. Stovall's criticisms was highly compressed to a few months in the Fall of 2015.

43.     For example, Mr. Buchanan had to become familiar with hiring and employee movement in the power line construction industry and to become familiar with Track's crew from the previous projects on POWER and Sunflower projects, as well as familiar with Track's crew from the project on which Rowan's accident occurred prior to Mr. Stovall's deposition scheduled for December 28, 2015.

10

44.    These are but a few of many examples of ongoing highly aggressive conduct by Rowan's attorneys which forced Mr. Buchanan to vigorously and proactively learn and master myriad aspects of the Project and this industry in a highly accelerated fashion. Thus, there was no opportunity to change counsel without risk of serious prejudice to POWER. In addition, the demand for change of counsel would have sacrificed the knowledge and relationships within POWER and with Sunflower acquired by Mr. Buchanan, and expose POWER to unnecessary risk in an action in which $15,000,000 in actual damages and punitive damages for alleged willful, wanton, reckless, and intentional conduct was alleged by Rowan.

45.    Old Republic's claims director Thomas Poskus contacted Mr. Peebles by phone on or about December 30, 2015. During their conversation, Mr. Peebles suggested that if Old Republic's insistence on using Mr. Pratt was a matter of rate differential, he was willing to discuss a negotiated rate as a resolution. Mr. Poskus dismissed the suggestion and stated that (a) Old Republic did not have to, and would not consider, retaining Mr. Buchanan and (b) that it is Old Republic's policy and practice to only hire its own panel counsel to defend insured cases.

46.    On January 13, 2016, Old Republic responded to POWER in writing, for the first time, regarding POWER's claim and the sole subject of the communication was regarding switching counsel to Mr. Pratt. Mr. Poskus's communication did not reference the fact that Mr. Buchanan had served as POWER's counsel in the Underlying Litigation for approximately four months, or that Old Republic had not previously communicated anything in writing to POWER from August 2015 through January 2016. Ex. 12. At the time of Mr. Poskus's writing there were already 87 docket entries in the Underlying Action.

47.    On February 11, 2016, Mr. Peebles wrote Old Republic in an effort to communicate his concern regarding Old Republic's insistence that POWER replace Mr.

11

Buchanan and substitute Mr. Pratt as counsel for the Underlying Action. Mr. Peebles, in great detail, described all work performed in the litigation to date under representation of Mr. Buchanan. Ex. 13.

48.     By letter dated March 29, 2016, Gallagher Bassett again dismissed POWER's concerns and demanded that POWER agree to terminate its chosen counsel in the Underlying Action and turn its file over to Mr. Pratt. Gallagher Bassett purported not only to act on behalf of Old Republic, but it threatened that if POWER did not comply with its demand, coverage would be rescinded under the Policy. Mr. Durham wrote for Gallagher Bassett: "Your failure to comply with the terms and conditions of coverage will be deemed a waiver of our offer of additional insured coverage and will be rescinded in its entirety if the file is not transferred to Mr. Pratt by **4/6/16**." See Ex. 14 (emphasis in original). Thus, seven months after the unusually aggressive Rowan litigation commenced, Old Republic continued to demonstrate a complete indifference to the risk of prejudice to POWER.

49.     By letter dated April 6, 2016, Mr. Peebles responded, again recounting the history of retaining Mr. Buchanan and all work done on the Underlying Action. Ex. 15. Mr. Peebles renewed POWER's request that Old Republic defend POWER in the Underlying Action by reimbursing Mr. Buchanan's fees, the only fair resolution given Old Republic's failure to respond to POWER's tender. *Id.*

50.     By letter dated May 18, 2016, Gallagher Bassett alleged that POWER had waived its right to coverage under the Policy and purported to withdraw, on behalf of Old Republic, its acceptance of POWER's tender. Ex. 16. That is, nearly nine (9) months after the unusually aggressive Rowan litigation commenced, Gallagher Bassett, which had admitted it had no counsel in Kansas City to recommend, acted in a manner to prejudice POWER.

51.     Despite POWER's numerous written requests, made from April through August 2016, that Old Republic and/or Gallagher Bassett provide POWER with a copy of the relevant Track Policy, Old Republic and Gallagher Bassett failed and refused to provide POWER with a copy of the Policy, in violation of law, despite the fact that each admitted that POWER was and is an additional insured under the Track/Old Republic Policy.  Old Republic finally provided said Policy on September 2, 2016.

52.     Between January 4 and November 23, 2016, approximately 29 depositions and sworn statements under oath, and recorded statements were taken in Kansas, Colorado, Illinois, Oregon, Idaho, Texas, and South Dakota, and because power line workers are transient, these required considerable efforts at locating and obtaining cooperation of the persons.

53.     Despite POWER's numerous requests made from May through September 2016, that Old Republic meet in person and agree to consider paying for defense of the litigation and/or consider moving forward with Mr. Buchanan as defense counsel, Old Republic emphatically refused such discussion, instead only repeating its ultimatum that POWER switch to Mr. Pratt as defense counsel or else POWER would lose all rights under the Track Policy. *See* Ex. 17, September 16, 2016 email from T. Poskus to D. Suchar ("before we continue an [sic] dialogue is confirmation that your client will cooperate in moving the file to Larry Pratt…A simple question that requires a yes or no answer and look forward to your response.").

54.     POWER responded to Old Republic's ultimatums by voicing its willingness to consider switching to Mr. Pratt as counsel if Old Republic would acknowledge and agree to reimburse the fees incurred to date by Mr. Buchanan.  *See* Ex. 18, September 16, 2016 email from D. Suchar to T. Poskus ("How could my client possibly agree to move the file to Mr. Pratt without some acknowledgement and agreement from Old Republic regarding an entire year of

defense and legal fees incurred since Old Republic breached its duty to defend by not responding to tender of the Rowan lawsuit? Answer my question below regarding reimbursement of defense costs since September 2015, and during any proposed transfer, and POWER will consider transferring the Rowan case to Mr. Pratt.")

55.     In response to POWER's numerous requests to discuss whether Old Republic would reimburse Mr. Buchanan's fees, Old Republic again rescinded coverage under the Policy. *See* Ex. 19 and 20.

56.     At the same time that Old Republic was purporting to rescind coverage and deny its previously admitted duty to defend POWER in the Rowan suit, Track's excess liability carrier Starr Insurance and its counsel were complementing all of the good work being done in the *Rowan* case by Mr. Buchanan and his law firm on behalf of POWER.  *See* Ex. 21, November 26, 2016 Email from A. Ryan to T. Buchanan ("You and your team have done a nice job with the defense.").

57.     Further, unlike Old Republic which refused and failed to communicate with Mr. Buchanan or request any information, at Starr Insurance's request, after reaching an agreement about confidentiality of the materials, Mr. Buchanan and his firm provided Starr with numerous documents related to the litigation including contracts, deposition exhibits, investigate reports, witness statements medical reports, expert reports, and other litigation documents.

58.     Old Republic has never asked for any such documents or information about the litigation. The sole focus of its communication since November 2015 has been switching counsel in the *Rowan* case from Mr. Buchanan to Mr. Pratt, without regard to the potential prejudice to POWER.

59.     To date, Old Republic has refused for more than a year to consider reimbursing the entirety of Mr. Buchanan's fees for the entirety of his firm's work performed in defense of POWER and in furtherance of Old Republic's interests – the very same work complemented by Track's Excess Insurer Starr Insurance Co.

60.     In its November 14, 2016 letter, Gallagher Bassett purports to use its own factual error regarding an alleged failure by POWER to send legal invoices <u>as the main basis to rescind coverage and deny any duty to defend POWER in the <i>Rowan</i> suit</u>. *See* Ex. 20 ("[Old Republic] previously agreed to reimburse Power Constructors for the fees they incurred from the date of tender through [Old Republic]'s acceptance of that tender on November 5, 2015. To date, you have not provided these invoices nor agreed to the substitution of counsel. Consequently Power has waived any additional insured coverage that may have been provided to Power under the [Old Republic] policy issued to Track Utilities").

61.     Gallagher Bassett's statements in its November 14, 2016 letter are plainly inaccurate and misleading.  Contrary to Gallagher Bassett's statement that POWER had not provided Mr. Buchanan's August through November 2015 fees for reimbursement, POWER made that disclosure directly to Mr. Poskus at Old Republic and to Mr. Dunham at Gallagher Bassett by email dated August 24, 2016. *See* Ex. 22, August 24, 2016 email from D. Suchar to T. Poskus and J. Dunham ("Tom, I'm attaching to this email the law firm invoices in the Rowan case that you requested--from September-November 2015. Can you let me know if there are dates in the second half of September that may work well for you for a short meeting in Chicago?  As I mentioned in my message below, both I and my client would like to work with you to resolve these issues.  Thanks much.").

62.     Such failure to recognize this disclosure, or respond to POWER's repeated pleas regarding the reimbursement of fees, or even agree to meet to discuss that topic, and Old Republic's rescission of coverage under the policy without justification, is part of a pattern and practice that began with Old Republic's failure and refusal to defend POWER in the *Rowan* case in August 2015.

63.     At the time that Gallagher Bassett issued the November 14, 2016 letter, Mr. Buchanan had served as counsel for POWER in the *Rowan* case for 14 months.  While Old Republic has insisted and continues to insist that counsel be switched to Mr. Pratt, the *Rowan* case has now proceeded to expert discovery, dozens of depositions have already been taken and many hundreds of hours of other significant discovery and case preparation have already been performed by Mr. Buchanan and his firm.  Old Republic has not requested, nor is there any evidence that Mr. Pratt has accessed any of the relevant case materials—the very same materials that Starr Insurance was sent by Mr. Buchanan per their request.

64.     Old Republic and Gallagher Bassett continue to this day to demand the replacement of existing counsel for POWER notwithstanding the prejudice that would result. The parties are six weeks from the close of all discovery, and the most recent demand to replace Mr. Buchanan was made while he was attempting to evaluate and respond to Rowan's expert disclosures and reports served on October 24, 2016.  In fact, Old Republic renewed its demands for its own counsel while Mr. Buchanan and POWER were facing a deadline of November 25, 2016 in which to retain experts, assist in the completion of their reports, and serve their reports and disclosures.  Old Republic and Gallagher Bassett have and continue to display complete indifference for the rights or exposure of their insured, POWER.

## **CAUSES OF ACTION**

### FIRST CAUSE OF ACTION

16

Breach of Contract (Duty To Defend)

65.     Paragraphs 1 through 64 are incorporated herein by reference as if fully set forth.

66.     Upon information and belief, an insurance contract existed between Track and Old Republic covering POWER as an additional insured for the policy period December 27, 2012 to December 27, 2013.

67.     POWER properly tendered a demand for defense and indemnity of the Underlying Action to Old Republic on August 29, 2015, and again through its third-party administrator on September 9, 2015.

68.     The Policy was triggered by, at the latest, August 29, 2015 when POWER tendered its claim to Old Republic.

69.     Old Republic failed to respond to POWER's demand for defense and indemnity until at least November 5, 2015, almost seven weeks after an answer to the initial complaint in the Underlying Action was due.  Instead, on September 1, 2015, Third Party Administrator Gallagher Bassett informed POWER that Old Republic had no ability to find or hire Kansas City counsel to defend POWER in the Underlying Action. As a result, POWER interviewed and hired qualified Kansas counsel, so that counsel could file an Answer, investigate Plaintiff's developing claims and to otherwise litigate the Underlying Action.

70.     While it failed to respond to POWER until at least November 5, 2015, when it did so, Gallagher Bassett, purporting to act on behalf of Old Republic, admitted that Old Republic had a duty to defend POWER in the Underlying Action.

71.     It was not until January 2016 that Old Republic responded to POWER in writing for the first time.  By the time of Old Republic's first written response, there were already 87 docket entries for the Underlying Action.

17

72.     Upon information and belief, and by Gallagher Bassett's purported admission while acting on behalf of Old Republic, Old Republic had a duty to defend POWER as an additional insured under the Track Policy.

73.     Old Republic breached the parties' insurance contract by failing to defend and indemnify POWER under the terms of Policy after POWER had tendered its demand for defense and indemnification.

74.     Old Republic continued and exacerbated that breach by purporting to rescind coverage without any valid basis under the Policy.

75.     As a direct result of the breach of contract by Old Republic, POWER has been damaged in an amount exceeding $100,000.00, the exact amount to be proven at trial, including attorney fees and defense costs paid by POWER to defend the Underlying Action and interest thereon at the lawful rate, and attorney's fees and costs incurred in seeking to obtain coverage for POWER under the Track policy, both in this case and otherwise.

## SECOND CAUSE OF ACTION
### Bad Faith Denial of Coverage

76.     Paragraphs 1 through 75 are incorporated herein by reference as though fully set forth.

77.     Old Republic owes a duty of good faith and fair dealing to its insured, POWER, as an additional insured under the Policy.

78.     POWER's right to coverage under the Policy is not fairly debatable.

79.     Old Republic breached its duty of good faith and fair dealing.

80.     Old Republic has intentionally breached its contractual obligation by intentionally and unreasonably denying or delaying payment for plaintiffs' defense costs, including attorneys'

fees incurred in the defense of the Underlying Action, which conduct by Old Republic constitutes bad faith.

81.     After breaching its duty of good faith and fair dealing by failing to respond to POWER's tender, Old Republic exacerbated its breach of the duty of good faith and fair dealing when it refused to reimburse Mr. Buchanan's fees, and again when it unreasonably and without any justification withdrew its defense of POWER in May 2016 and again purported to do so in November 2016; refused to provide POWER with the Track Policy; refused to discuss reimbursement of past legal fees incurred in defense of the Underlying Litigation; refused meetings with POWER's representatives; refused to discuss continued use of and retention of Mr. Buchanan as ongoing defense counsel for POWER in the Underlying Litigation; and instead insisted by way of numerous ultimatums that POWER switch counsel to Mr. Pratt despite Old Republic having breached its duties under the Track Policy by failing to defend POWER from at least August-November 2015.

82.     As a result of Old Republic's conduct, POWER was harmed in a way not fully compensable in contract.

83.     The actions of Old Republic, as herein above stated, have damaged POWER in an amount that shall be established at the time of trial.

THIRD CAUSE OF ACTION
Declaratory Relief

84.     Paragraphs 1 through 83 are incorporated herein by reference as though fully set forth.

85.     There is an actual, ripe and justiciable case or controversy between POWER and Old Republic over when Old Republic was required under the terms of the Policy to provide a defense and coverage to POWER for the claims made in the Underlying Action.

19

86.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and/or Idaho Code §§ 10-1201, *et al.*, POWER is entitled to a declaratory judgment that:

     a.     There was and is a duty to defend POWER under the Policy for the Underlying Action, including use of POWER's chosen counsel to defend the Rowan action and reimbursement of said counsel's legal fees and costs as a result of Old Republic's failure to defend POWER and additional breaches of the Policy; and

     b.     There is coverage and a duty to indemnify POWER under the Policy for the Underlying Action; and

## ATTORNEYS' FEES AND COSTS

87.     Paragraphs 1 through 86 are incorporated herein by reference as though fully set forth.

88.     POWER has been required to retain attorneys to prosecute this action against Old Republic.

89.     POWER is entitled to recover all costs and attorneys' fees incurred herein to prosecute this action against defendant Old Republic, pursuant to the provision of Idaho Code Sections 41-1839, 12-117, 12-120, 12-121 and 10-1210, and any other applicable statute, rule or regulation.

## DEMAND FOR JURY TRIAL

POWER demands trial by a jury pursuant to the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff POWER Constructors, Inc. prays for judgment of this Court in its favor and against Old Republic, as follows:

A.      For the entry of a judgment declaring that Old Republic has a duty to defend POWER as an additional insured under the Policy;

B.      For entry of a money judgment against defendant Old Republic for POWER's damages in an amount to be proven at trial, including, but not limited to, the costs and attorneys' fees incurred by POWER to defend the Underlying Action, and such additional damages to compensate plaintiff for defendant's bad faith conduct;

C.      For an award of attorney's fees and costs incurred by plaintiffs to prosecute this action against Old Republic, and otherwise to obtain insurance coverage under the Track Policy pursuant to I.C. §§ 41-1839, 12-117, 12-120, 12-121, 10-1210 and any other applicable statute, rule, or regulation;

D.      For statutory interest before and after judgment;

E.      For costs of suit incurred herein; and

F.      Granting such other, further, or different relief as the Court may deem just and equitable.

POWER specifically reserves the right to amend this complaint to assert additional claims, including, but not limited to, claims for punitive damages.

RESPECTFULLY SUBMITTED this 5th day of December, 2016

Tara Martens Miller
*Attorneys for Plaintiff*


/s/ James Duffy O'Connor
James Duffy O'Connor

/s/ David E. Suchar
David E. Suchar

/s/ John R. Darda
John R. Darda

MASLON LLP
3300 Wells Fargo Center
90 S. 7th Street
Minneapolis, Minnesota 55402
612.672.8200
*\* Pro hac Vice forth coming*

*Attorneys for Plaintiff*